39924

UNITED STATES DISTRICT COURT
DISTRICT OF FLORIDA
"IN ADMIRALTY"

**05-60225**

FT. LAUDERDALE DIVISION



RANDALL A. BONO, Trustee U/A dated
May 8, 1995,

     Plaintiff,

vs.

AMERICAN EAGLE FLEET LEASING,
INCORPORATED and/or AMERICAN
FLEET LEASING, INCORPORATED.;
COIN CASTLE CASINO LINES, INC.;
ALBERT LAGANO, individually and
GARY SMITH, individually,

     Defendants.

_____/

## COMPLAINT

COMES NOW, the Plaintiff, RANDALL A. BONO, Trustee U/A dated May 8, 1995

("PLAINTIFF") by and through his undersigned counsel, and, brings this, his Complaint, against

AMERICAN EAGLE FLEET LEASING, INCORPORATED and/or AMERICAN FLEET

LEASING, INCORPORATED; COIN CASTLE CASINOS LINES, INC.; ALBERT LAGANO

and GARY SMITH, alleging as follows:

1.     This is a case of Admiralty and Maritime Jurisdiction as hereinafter more fully appears and the Plaintiff's claim is in Admiralty and Maritime pursuant to 28 U.S.C. 1333 and within the meaning of Fed.R.Civ.P. Rule 9(h).

2.     The Plaintiff is an individual *sui juris* in all respects, and one hundred (100%) percent owner of the Motor Vessel Lady Luck, Official Number: 507259. A copy of the vessel's document showing ownership to the Plaintiff is attached hereto and marked as Exhibit "A".

3.     The Defendant AMERICAN EAGLE FLEET LEASING, INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED, at all times material hereto, were the Charterer of the M/V Lady Luck per the terms of a Bareboat Charter Party entered into between the Plaintiff and AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED, a copy of which Charter is attached hereto and marked Exhibit "B". At all times material hereto AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED were doing business in Palm Beach County and/or Broward County, Florida.

4.     COIN CASTLE CASINO LINES, INCORPORATED,, is a Florida Corporation which subchartered the M/V Lady Luck from AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED and/or had possession of the M/V Lady Luck pursuant to the consent of AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED; and at all times material

hereto COIN CASTLE CASINO LINES, INC., was doing business in Palm Beach County and/or Broward County, Florida.

5.     ALBERT LAGANO, individually, is an attorney licensed to practiced law in the State of Florida, with offices at 551 S. Appolo Blvd., Ste. 103, Melborne, FL 32901, who, at all times material hereto, acted on behalf of the aforein-named corporate Defendants and did give and execute an Individual Guarantee, a copy of which is attached hereto and marked Exhibit "C", guaranteeing the terms and conditions of the aforementioned Charter Party and, agreeing to venue and jurisdiction in the United States District Court for the Southern District of Florida in the event Plaintiff found it necessary to take action on said guarantee.

6.     GARY SMITH at all times material hereto was an individual acting on behalf of the aforementioned corporate Defendants, and at all times material hereto, doing business in Palm Beach County and/or Broward County, Florida. Mr. Smith, as Mr. Albert Lagano, did individually guarantee the performance of the terms and conditions of the aforementioned Charter, a copy of which Individual Guarantee is attached hereto and marked as Exhibit "D", and did agree to venue and jurisdiction in the United States District Court for the Southern District of Florida in the event the Plaintiff herein found it necessary to take legal action upon such guarantee.

## FACTS

7.     On or about July 30, 2003, while the M/V Lady Luck was situate in Broward

County, Florida, AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED, through the efforts of Mr. Al Lagano and Mr. Gary Smith, did enter into a Bareboat Charter Party and Option to Purchase, Exhibit "B", which provided for charterhire in the amount of $49,000.00 per month for five consecutive months. The Charter also gave the charterer the option to purchase the M/V Lady Luck, upon the payment of all charterhire and monies due under the Charter Party, for the sum of $25,000.00. Additionally, the Charter provided that neither the charterer, the Master of the vessel, nor any other person "has or shall have the right, power or authority to create, incur or permit to be placed or imposed upon the vessel or her freights, profits or hire, any liens whatsoever". Charterer further agreed, at charter's expense, to protect, save harmless and indemnify the owner from and against all liens of any nature on the vessel; finally, the Charter provided that, in the event of damage to the vessel, Charterer shall arrange for repairs of such damage and shall pay the costs thereof and all other expenses incidental thereto.

8. Because the Plaintiff was unwilling to execute the Charter based upon the credit of AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED, alone, both attorney Albert Lagano and Gary Smith, a principle in AMERICAN EAGLE FLEET LEASING INCORPORATED and/or AMERICAN FLEET LEASING INCORPORATED, did give Individual Guarantees, Exhibit "C" and "D" specifically rendering themselves individually liable in the event of any default or breach of the Charter

Party.

9.  The M/V Lady Luck was delivered over to Defendants in Broward County, Florida and put into service by AMERICAN EAGLE FLEET LEASING INCORPORATED and/or AMERICAN FLEET LEASING, INCORPORATED.

10. AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED and/or COIN CASTLE CASINO LINES, INCORPORATED, did breach the aforementioned Charter in that:

   a)  In excess of $120,000.00 in charterhire and attorneys fees authorized under the terms of the Charter, was left due, owing, and unpaid at the termination of the Charter; and

   b)  the Charterer did damage said vessel while in the possession of Charterer, leaving $47,500.00 in unpaid yard bills for the repair of said damage, which bills had to be paid by the Plaintiff/owner; and

   c)  the Defendant AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED and/or COIN CASTLE CASINO LINES, INC., did, in the operation of said vessel, incur various maritime liens, including but not limited to, liens allegedly due and owing Capt. William Donahue for wages; Lucky Gaming, Inc., for gambling equipment placed aboard the M/V Lady Luck at the direction of AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or COIN CASTLE CASINO LINES, INC.; and for electronics placed aboard the M/V Lady Luck at the instruction of the

Charter,

d)      the Plaintiff/owner was forced to incur approximately $2,000.00 for moving the vessel from Palm Beach, Florida to Broward County, Florida, to the premises of National Liquidators, said Charter specifically providing for redelivery of the M/V Lady Luck, at Charterers expense, to National Liquidators.

## COUNT I

## BREACH OF CHARTER PARTY

11.     Plaintiff herein adopts and realleges paragraphs one through ten above, as if set forth *in hoc verba* herein.

12.     At all times material hereto Charterer of the M/V Lady Luck, AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED, and the subcharterer or operator in possession with permission of the Charterer, COIN CASTLE CASINO LINES, INC., did breach the aforementioned Charter Party in failing to pay earned Charterhire; in damaging the vessel; in permitting liens to be incurred against the vessel; and in failing to return said vessel to the premises of National Liquidators, Broward County, Florida, at the conclusion of the charter.

WHEREFORE, the Plaintiff herein sues AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED and COIN

CASTLE CASINO LINES, INC., for a sum in excess of $168,000.00, plus interest, attorneys fees; the amount of valid maritime liens asserted by third parties against the M/V Lady Luck and the cost of defense thereof, and other costs to be awarded by this Court.

## COUNT II

13.   The Plaintiff adopts and realleges paragraph one through twelve, as if set forth *in hoc verba* herein.

14.   Defendants ALBERT LAGANO and GARY SMITH did execute Exhibits "C" and "D" individually guaranteeing the performance of the terms and conditions of said Charter Party.

15.   The Charterer and/or Subcharterer or operator of the M/V Lady Luck in possession with permission of the Charterer AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED, has breached the terms of the Charter Party, more than $168,000.00 being due and owing to the Plaintiff/owner under the terms of said Charter Party for unpaid charterhire and attorneys fees; payment of charterer's yard bill by the vessel/owner; maritime liens incurred by Charterer; and the cost of returning the vessel to National Liquidators, Broward County, Florida.

WHEREFORE, the Plaintiff demands Judgment against ALBERT LAGANO and GARY SMITH, individually and/or jointly upon their individual guarantees in an amount in excess of $168,000.00 plus interest and attorneys fees; the amount of valid maritime liens asserted against

the M/V Lady Luck and the cost of defense thereto, and other costs to be awarded by this Court.

## COUNT III

16.   A search of the records for the State of New York and for the State of Florida fail to disclose the existence of a corporation named AMERICAN EAGLE FLEET LEASING INCORPORATED or AMERICAN FLEET LEASING, INCORPORATED, the corporate entities named in the Charter Party marked Exhibit "B". Either there was a scribners error occasioned by Messrs. Albert Lagano and/or Gary Smith in furnishing the name of the Charterer and or executing a Charter in the name of AMERICAN EAGLE FLEET LEASING INCORPORATED and/or AMERICAN FLEET LEASING INCORPORATED, which scribner's error constitutes a mutual mistake of material fact; alternatively there was intent to defraud the owner of this vessel through the use of corporate names which are not identified with any viable corporation, Florida or New York.

17.   The principals of equity and fair dealing require this Honorable Court to amend the the Charter and the individual guarantees given by Messrs. Albert Lagano and Gary Smith, to reflect the true identity of the corporation or entities or other individuals who actually chartered and operated this vessel under the terms of that Charter Party identified and marked as Exhibit "B".

WHEREFORE, the Plaintiff requests this Honorable Court to conform the Charter Party and the Individual Guarantees to reflect the proper name of the corporation and/or entity who

actually operated this vessel as Charterer and/or Sub-Charterer and/or as operator in possession.

Respectfully submitted,

LANE, REESE, AULICK, & SUMMERS, P.A.
ATTORNEY FOR Plaintiff
2600 Douglas Road
Douglas Centre, Suite 304
Coral Gables, FL  33134
(305) 444-4418

By: _____
George Ø. Mitchell Esq.
Florida Bar No. 055802

# Coast Guard Vessel Documentation

**Data found in current database.**

| | | | |
|---|---|---|---|
| Vessel Name: | **LADY LUCK** | USCG Doc. No.: | **507259** |
| Vessel Service: | PASSENGER (MORE THAN 6) | IMO Number: | * |
| Trade Indicator: | Coastwise Unrestricted | Call Sign: | WDB5388 |
| Hull Material: | STEEL | Hull Number: | FI-126 |
| Shipyard and Address: | * * | Year Built: | 1967 |
| Hullyard and Address: | * WARREN RI | Length (ft.): | 77.9 |
| Hailing Port: | MIAMI | Hull Depth (ft.): | 8 |
| Owner: | RANDALL A BONO, TRUSTEE U/A/ DATED 5/8/95 U/A DTD 5/8/95 8499 TAMIAMI TRAIL NO 1 SARASOTA, FL 34238 | Hull Breadth (ft.): | 27.9 |
| | | Gross Tonnage: | 92 |
| | | Net Tonnage: | 63 |
| Documentation Issuance Date: | October 06, 2003 | Documentation Expiration Date: | October 31, 2004 |
| **Previous Vessel Names:** | THE DIXIE DUCK MR. LUCKY | **Previous Vessel Owners:** | LUCKY MARITIME INC |

*Return to Vessel by CG Doc. Number Query Page*

*Go to Vessel by Name Query Page*



**EXHIBIT**

A

08-18-03  17:08   From-LANE REESE   AUGUSTINE FIELD   0807-1A3004   T-762  P.002/012   F-290
Jul 18 03 05:08p   coastal marine   713 532 2618   p.2
JUL-18-2003  05:42AM  FROM-

## BAREBOAT CHARTER PARTY AND OPTION TO PURCHASE

**BAREBOAT CHARTER PARTY,** dated as of the _8th_ day of _July_____, 2003, between RANDALL A. BONO, Trustee UA dated May, 1995, [hereinafter called Owner], and American Fleet Leasing Incorporated, a New York Corporation, [hereinafter called Charterer]:

1. **DEMISE:** upon the terms and conditions of this charter, Owner agrees to let and demise and Charterer agrees to hire the following vessel:

|   |   |   |
|---|---|---|
| a) | Vessel name: | LADY LUCK |
| b) | Vessel service: | USCG Doc. No. : 507259 |
| c) | Hull Number: | XI-126 |
| d) | Year Build: | 1967 |
| e) | Length (foot): | 77.9 |
| f) | Hull Depth (feet): | 8 |
| g) | Hull Breadth (feet): | 27.9 |
| h) | Hull Material: | steel |
| i) | Gross Tonnage: | 92 |
| j) | Net Tonnage: | 63 |

2. **WARRANTIES:** The parties acknowledge that for the last year this vessel has been under arrest and/or laid up and not in service. Accordingly, the vessel is being chartered as is, where is, with all faults. The Owner makes no warranties except that the Owner has good and marketable title to said vessel and is authorized as the vessel Owner to enter into this Charter.

3. **DELIVERY:** The vessel shall be delivered where she presently lies, at the premises of National Liquidators, 1915 S.W. 21ˢᵗ Avenue, Ft. Lauderdale, Florida. Accrued doc charges in the amount of $16,343.90 are to be divided between the Charterer and Owner, with Charterer paying $12,000 and the Owner paying the balance.

4. **CHARTER HIRE:** With the execution of this Charter Party, Charterer shall furnish Owner with a non-refundable deposit of $75,000. The aforementioned sum, together with five consecutive monthly payments of $49,000 each, shall constitute the Charter Hire. The first monthly payment shall be due thirty days from the date the Charterer takes possession of the vessel. Thereafter, the following four consecutive monthly



EXHIBIT
B

06-18-03   11:08   From-LANE REESE AULICK SUMMER FIELD PA                     713 532 2618        P.3
      Jul 18 03 05:08p   coastal marine                          713 532 2618        p.3

          JUL-18-2003  08:42AM  FROM-

payments shall be made on the same date of the month as the initial monthly payment. "Payment" under this Charter Party shall be in U.S. Dollars either by wire transfer to the account of Owner or delivered to Owner via certified check, in the appropriate amount, on or before the date the payment is due. Failure to timely make said payment will constitute a "default" under this agreement.

5.    USE AND OPERATION, ETC.: Charterer shall have full use and exclusive possession and control of the Vessel and shall man, victual, supply, equip, upkeep, navigate and operate the Vessel at its expense or by its own procurement throughout the charter period. The master, officers and crew of the Vessel shall be engaged and employed by Charterer and shall remain Charterer's servants, and shall be under its direct control and direction. Charterer will permit the Vessel to be operated only in the Coastwide Trade.

6.    DOCUMENTATION. Owner shall document the Vessel under the laws of the United States of America and throughout the charter period shall maintain such documentation under such laws. Charterer shall execute such documents, take such action and furnish such information as Owner may reasonably request to enable Owner so to document the Vessel and maintain such documents, take such action and furnish such information as Owner may reasonably request to enable Owner so to document the Vessel and maintain such documentation. Neither Owner nor Charterer shall permit the Vessel to be documented or operated under any flag other than that of the United States of America or do or permit anything to be done which might injuriously affect the documentation of the Vessel under the laws and regulations of the United States of America.

7.    MAINTENANCE, CERTIFICATION, REPAIR AND INSPECTION:

      (a)    During the charter period Charterer, at its expense shall at all times maintain, service and preserve the Vessel in good running order and repair, in accordance with good commercial maintenance practices so that the Vessel shall be, insofar as due diligence can make it so, tight, staunch, strong, and well and sufficiently tackled, periled, furnished, equipped and in every respect seaworthy and in good operating condition.

      (b)    The Vessel shall be repaired, over hauled, dry docked, cleaned and painted by Charterer at its expense whenever necessary to maintain and preserve the Vessel in accordance with the immediately preceding paragraph. Charterer shall keep the Vessel in such condition as would entitle them to the highest classification and rating; for Vessel of the same age and type and keep the Vessel in such condition as would enable them to pass such inspection as may be required to be maintained by Charterer hereunder and to pass such inspection as may be required by law.

      (c)    Charterer further agrees, that due to the uniqueness of the type of Vessel, that

08-18-03  11:08  From-LANE REESE AULICK SUMMER FIELD PA        3054445580        T-769  P.004/010  F-873
JUl 18 03 05:08P    coastal marine                713 532 2618          P.4

in the event that Owner requests, Charterer will be required to purchase from Owner all unique items including gambling equipment.

(d)  In the event any casualty, accident or damage to the Vessel shall occur in excess of $5,000, Charterer shall forthwith give Owner full information regarding same.

8.  LAWS, TAXES, ETC. Charterer at its expense shall cause the Vessel at all times to comply with all applicable rules, laws and regulations and shall have on board, when required thereby, valid certificates showing such compliance. Charterer shall pay and discharge, all taxes, assessments, excises, levies, duties, fees, fines, penalties and other governmental charges lawfully imposed upon it.

9.  LIENS. Neither Charterer, the master of the vessel, nor any other person has or shall have any right, power or authority to create, incur or permit to be placed or imposed upon the Vessel or her freights, profits or hire, any lien whatsoever.

Charterer shall at all times carry a true copy of this Charter and any amendments or assignments thereof, as furnished by Owner, aboard the Vessel with its documents and shall exhibit the same to any person having business with the Vessel which might give rise to any lien thereon or to the sale, conveyance, or lease thereof and, on demand, to any representative of Owner.

10.  INSURANCE:

(a)  Charterer shall, without cost to Owner, keep the Vessel insured against such risks and in such form and in such amounts as Owner shall reasonably request, provided that such insurance on the Vessel shall in no event be less than the replacement hull value of said Vessel ($600,000.00) and to maintain with respect to the Vessel Protection Indemnity Risk Insurance against such risks and in an amount not less than $1,000,000.00 per occurrence with excess insurance no less than $5,000,000.00 per occurrence. All policies of insurance shall provide that there shall be no recourse against the Owner for the payment of premiums and commissions. As to any such policy which provides for the payment of Club calls, assessments or advancements, not only shall there be no recourse against Owner for the payment thereof, but at least thirty (30) days prior notice shall be given to Owner by underwriters in the event of any actual or proposed cancellation or reduction of coverage or any material change in the provisions thereof. Owner shall be named as an additional insured or loss payee thereunder, as their respective interests shall appear on any hull and P & I insurance policy.

(b)  Charterer shall carry such workmen's compensation insurance as shall be required under such applicable law.

(c)    Charterer shall deliver to Owner a certified true copy of all policies evidencing insurance maintained under this charter, provided that original policies shall be made available to Owner for examination promptly upon written request.

(d)    Charterer will not do any act nor suffer any act to be done, whereby any insurance required herein shall or may be suspended, impaired or defeated, and will not suffer for the Vessel to carry cargo or passengers not permitted, or to be operated in any geographical area where it would not be covered under the insurance policies in effect without first covering such Vessel with insurance complying with the provisions of this section.

11.    **LOSS, REQUISITION OR DAMAGE:**

(a)    In the event of damage to the Vessel to an extent which in the charter's and Owner's opinion makes repair thereof inadvisable, Charterer, by written notice to the Owner given within 30 days after the occurrence of the damage, may declare such Vessel a constructive total loss, and the Vessel may be declared an arranged total loss by agreement between the parties and the insurers. In such event, Owners shall be entitled to the remaining unpaid charter hire for the term of this charter, which Charterer shall be obliged to pay the Owner. Charterer shall be given credit for any hull insurance paid to Owner.

(b)    In the event of damage to the vessel short of actual, constructive, or arranged total loss thereof, Charterer shall arrange for the repair of such damage and shall pay the costs thereof and all other expenses incidental thereto; provided the Charterer shall be entitled to reimbursement to the extent of any proceeds of the hull insurance received by Owner on account of such damage. Charterer shall continue to make or cause to be made all charter hire payments provided for in this charter during the period of such repair.

(c)    In the event of government requisition, confiscation or seizure of the Vessel, this charter shall not be terminated and Charterer shall continue to make or cause to be made all payments provided for herein without interruption or abatement.

12.    **INDEMNIFICATION:**

(a)    Charterer at its expense shall protect, save harmless and indemnify Owner from and against any lien of any nature on the Vessel, any claim of any nature founded or unfounded by any third party (including, without limitation, any claim for salvage, crew wages, personal injury, necessaries, any tax, assessment, excess, levy, duty, fee or other governmental charge) and any fine or penalty arising from any violation of any law, treaty, convention, rule

08-18-03  11:08    From-LANE REESE AULICK SUMMER FIELD PA    3054445804    T-768  P.285

Jul 18 03 05:08p    coastal marine    713 532 2618    p.6

JUL-18-2003  09:43AM  FROM-    T-768  P.006/010  F-873

or regulation, if such lien, claim, find or penalty arises from any violation of any law, treaty, convention, rule or regulation, if such lien, claim, fine or penalty arises from the Ownership, use operation or maintenance of the Vessel during the charter period.

(b)  Any suit that is filed against the Vessel, or if the Vessel shall be otherwise attached or levied upon or taken into custody or detained by virtue of any proceeding in any court or tribunal or by any government or other authority or otherwise, Charterer shall forthwith notify Owner by telegram, confirmed by letter, and at Charterer's expense within twenty days thereafter, shall cause such Vessel to be released of any lien asserted thereon in connection with such libel or other action to be discharged as provided.

13.  DEFAULT, RETAKING. If Charterer shall fail to pay any charter hire for more than five (5) days after the date payment is due, or fail to perform or comply with any provision of this charter or fail to perform or comply with any other provisions of this charter for more than seven (7) days after written notice of default given by Owner, Owner may, at its option withdraw the Vessel from the service of the Charterer and terminate this charter by giving written notice to the Charterer, without prejudice to any claim for damage suffered or to be suffered by reason of Charterer's default which Owner might otherwise have had against Charterer; in the absence of any such withdrawal, and, upon giving such notice or at anytime thereafter, Owner may retake the Vessel, wherever found, without prior demand and without legal process, and for that purpose may enter upon any dock, pier or other premises where the vessel may be for purposes of taking possession thereof.

14.  REDELIVERY. At the expiration of the charter period, unless Charterer elects to exercise the purchase option contained herein, Charterer shall redeliver said vessel to National Liquidators in the highest class for vessels of her age and type with no requirements or recommendations of any governmental authority or insurance underwriter having been unfulfilled; and with all required certificates in effect. Redelivery shall be at Charterers expense with Charterer giving notice of said redelivery to Owner.

15.  ASSIGNMENTS: This charter may not be assigned by Charterer without the consent, said consent by Owner not to be unreasonably withheld.

16.  OPTION TO PURCHASE: Upon payment of all charter hire and monies due under this Charter Party, or at the conclusion of the Charter Party, provided the Charterer is not in default and has made all required payments, Charterer has the option to purchase the vessel and all appurtenances, fixtures and equipment thereon, for the sum of $ 25,000.00 . If this option to purchase is exercised, Owner shall provide Charterer with a documented Bill of Sale for the vessel and her equipment.

17.  NOTICES: All notices and other communications under this Charter shall be in

writing and shall be mailed by first-class registered or certified mail, postage prepaid, addressed as follows:

If to Owner:          Randall Bono
                      The Simmons Firm
                      301 Evans Avenue
                      Suite 300
                      Wood River, Illinois 62095

If to Charterer:      American Fleet Leasing Incorporated
                      541 Peter Paul Drive
                      W. Islip, NY 11717

18.  **WAIVER, ETC.:** No waiver by Charterer or by Owner of any one covenant or condition of this Charter shall be construed as a waiver of any other covenant or condition; nor shall a waiver of any one breach hereof be construed as a waiver of any other or subsequent breach. Neither this charter nor any term or provision hereof may be changed, waived, discharged, or terminated orally, but only by an instrument in writing signed by the party or parties against which enforcement of the change, waiver, discharge or termination is sought.

19.  **LAW GOVERNING.** This Charter Party shall be governed by the general and statutory admiralty law of the United States and/or the Law of the State of Florida, as same may apply.

20.  **NO PERSONAL CONTRACT:** This charter is not a personal contract. Owner shall have the benefit of all limitations and exemptions from all liabilities accruing to the Owner of the Vessel by any statute or rule of law for the time being in force, and Charterer shall have the benefit of all limitations of and exemptions from liability accruing to charter Owners or Charterers of the Vessel by any statute or rule of law for the time being in force; provided, however, that such limitations of and exemptions from liability shall not in any way affect the obligations of Charterer to Owner.

21.  **LEGAL FEES:** The Charterer is to pay all legal fees incurred by the Owner in connection with the execution and preparation of this Charter and any documents associated therewith. Should Charterer elect to purchase the vessel, Charterer shall pay all legal fees and closing costs. Should it be necessary for Owner to retain the service of an attorney in connection with the enforcement of the terms and provisions of this charter, Charterer agrees to pay Owner's attorney fees and legal costs so incurred.

22   **HEADINGS:** The headings in this charter are for the purpose of reference only and shall in no way limit or affect any of the terms or provisions hereof.

23. **COUNTERPARTS:** This charter may be executed in any number of counterparts, each of which shall be deemed as an original, all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this charter to be executed and delivered by their respective officers thereunto duly authorized as of the date first above written.

_____
WITNESS

Owner _____ Trustee
By:

_____
WITNESS

_____
WITNESS

Charterer _____
By:

_____
WITNESS

Attest: _____

If Charterer is to be a corporation then the execution by Charterer shall be attested by Secretary and a Resolution authorizing the charter shall be attached.

## INDIVIDUAL GUARANTY

I, ALBERT LAGANO, for value received, do hereby individually and unconditionally guaranty to RANDALL A. BONO, Trustee UA dated May 8, 1995, of the City of Wood River, County of Madison, State of Illinois, the performance of the Charterer, American Fleet Leasing Incorporated, including the payment of all charter hire, under that Charter Party entered into between American Fleet Leasing Incorporated, the Charterer, and RANDALL A. BONO, Trustee UA dated May 8, 1995, owner, dated the _____ day of _____, 2003, for the Charter of the M/V Lady Luck.

I expressly waive diligence on the part of RANDALL A. BONO, Trustee UA in the collection of any indebtedness and expressly agree that the owner of said vessel may call upon this Guaranty without first taking action or making demand of the Charterer; without furnishing the Charterer or myself formal notice of default or demand that said default be cured. All that is required is that the Charterer be in default and that the default has not been timely cured as provided by the Charter. Specifically, I expressly waive notice of nonpayment and/or non-performance, protest and notice of protest. I acknowledge that this Guaranty is in effect and binding on myself without reference to the existence of any other Guaranty, executed by any other person or persons. Further, I agree that the Guaranty shall continue in full force and effect notwithstanding the death or the release by agreement or by operation of law of, or the extension of time to any other Guarantor(s) as to obligations then existing.

To the extent that it becomes necessary to take legal action upon this Guaranty, I agree to venue and jurisdiction in the United States District Courts for the Southern District of Florida, or to the Eleventh Judicial Circuit in and for Miami Dade County, Florida. The law of the State of Florida shall apply.

I further waive formal service of process and agree that jurisdiction over my person may be obtained through service by registered mail to the address set forth below:

     541 Peter Paul Drive
     W. Islip, N.Y. 11717

or by facsimile transmission to the following number: (631) 419-0707

Should it be necessary for the vessel owner to hire the services of an attorney in order to make demand and/or enforce the terms of this unconditional guaranty given by myself, I agree to pay the vessel owner's attorneys fees and costs so incurred.

WITNESS                              GUARANTOR:
                                     By: ALBERT LAGANO
WITNESS

**EXHIBIT**
C

04/28/2003  14:29   6312441571                          AMERICAN EAGLE TITLE                         PAGE  10

Jul 18 03 05:09p       coastal marine                   713 532 2618            p.10

JUL-18-2003 08:45AM   FROM-                                        T-752  P.010/018  F-873

## INDIVIDUAL GUARANTEE

I, GARY SMITH, for value received, do hereby individually and unconditionally guaranty to RANDALL A. BONO, Trustee UA dated May 8, 1995, of the City of Wood River, County of Madison, State of Illinois, the performance of the Charterer, American Fleet Leasing Incorporated, including the payment of all charter hire, under that Charter Party entered into between American Fleet Leasing Incorporated, the Charterer, and RANDALL A. BONO, Trustee UA dated May 8, 1995, owner, dated the _25_ day of _June_, 2003, for the Charter of the M/V Lady Luck.

I expressly waive diligence on the part of RANDALL A. BONO, Trustee UA in the collection of any indebtedness and expressly agree that the owner of said vessel may call upon this Guaranty without first taking action or making demand of the Charterer; without furnishing the Charterer or myself formal notice of default or demand that said default be cured. All that is required is that the Charterer be in default and that the default has not been timely cured as provided by the Charter. Specifically, I expressly waive notice of nonpayment and/or non-performance, protest and notice of protest. I acknowledge that this Guaranty is in effect and binding on myself without reference to the existence of any other Guaranty, executed by any other person or persons. Further, I agree that the Guaranty shall continue in full force and effect notwithstanding the death or the release by agreement or by operation of law of, or the extension of time to any other Guarantor(s) as to obligations then existing.

To the extent that it becomes necessary to take legal action upon this Guaranty, I agree to venue and jurisdiction in the United States District Courts for the Southern District of Florida, or to the Eleventh Judicial Circuit, in and for Miami Dade County, Florida. The law of the State of Florida shall apply.

I further waive formal service of process and agree that jurisdiction over my person may be obtained through service by registered mail to the address set forth below:

    541 Peter Paul Drive
    W. Islip, N.Y. 11717

or by facsimile transmission to the following number: (631) 419-0707

Should it be necessary for the vessel owner to hire the services of an attorney in order to make demand and/or enforce the terms of this unconditional guaranty given by myself, I agree to pay the vessel owner's attorneys fees and costs so incurred.

WITNESS

GUARANTOR:

By: GARY SMITH

WITNESS

**EXHIBIT**

D

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET 05 - 60225

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**CIV - DIMITROULEAS**

## I. (a) PLAINTIFFS

RANDALL A. BONO, Trustee U/A dated
May 8, 1995

## DEFENDANTS

AMERICAN EAGLE FLEET LEASING, INCORPORATED
and/or AMERICAN CASINO FLEET LEASING, INCORPORATED:
COIN CASTLE CASINO LINES, INC.; ALBERT
LAGANO, individually and GARY SMITH,
individually

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Sarasota
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Broward
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**TORRE**

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
George O. Mitchell, Esq., Lane, Reese, Aulick,
Summers & Ennia, PA, 2600 Douglas Rd., Ste. 304
Coral Gables, FL 33134 - (305) 444-4418

ATTORNEYS (IF KNOWN)

(d) CIRCLE COUNTY WHERE ACTION AROSE:  DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION  (PLACE AN X IN ONE BOX ONLY)

U.S.C. 1333     Fla.R.Civ.P. Rule 9(b)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)  AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**FILED by _____ D.C.**

## IV. ORIGIN  (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**FEB 11 2005**

**CLARENCE MADDOX**
**CLERK U.S. DIST. CT.**
**S.D. OF FLA. - MIAMI**

## V. NATURE OF SUIT  (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **B SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions A OR B |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION  (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Breach of Charter Party and Personal Guarantees

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER FRCP 23

**DEMAND $**
excess $160,000.00

CHECK YES only if demanded in complaint
**JURY DEMAND:**  ☐ YES  ☐ NO

## VIII. RELATED CASE(S)  (See instructions)
**IF ANY**

Judge Graham    #05-20207
Judge Lenard #05-60114

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 415373    AMOUNT 250 —    APPLYING IFP    JUDGE    MAG. JUDGE

JS 44 Reverse
(Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS–44

## Authority For Civil Cover Sheet

The JS–44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs – Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS–44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**V.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS–44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.